Bill was filed to restrain defendants, under the Securities act ("Blue Sky law" — P.L. 1927 p. 138, as amended P.L. 1930 p.250); and order to show cause issued, and on the hearing affidavits filed by both sides were considered, and an examination had in open court of certain affiants who had signed conflicting affidavits.
It is quite clear from the entire proofs that the defendants' scheme is a stock-selling scheme, and nothing else. There is a slight attempt made to show that bona fide corporate operation was intended and had been commenced, but the paucity of proofs in this behalf is the best evidence to the contrary. *Page 223 
The four individual defendants organized the company and sold to themselves at ten cents per share, forty thousand shares of common stock, out of the sixty thousand authorized. They then proceeded to sell to the public preferred stock at $25 per share, and common stock at $15 a share. They have sold some one hundred and eighty shares of the company's common stock as against some four hundred and thirty-two shares of their own common stock. I am entirely satisfied that they did not make full disclosure to the purchasers as to the facts of the issuance of the forty thousand shares of common stock to themselves. Some of these purchasers knew nothing about it at all. Others say they were told that forty thousand shares had been issued to the officers at a "nominal" figure, in lieu of salaries, so as to reduce the company's overhead expense. One, at least, of the purchasers testified she thought a "nominal" figure meant one dollar per share — which would have meant the company's treasury had received $40,000 instead of $4,000. Assuredly none of the purchasers knew what the actual consideration was, for it has not even yet been explained.
The defendants' affidavits in nowise set up any contract by the officers as to what services they were to perform without salaries, nor for what period of time; it is evident that no such contract was ever made, or definitely formulated. Their affidavits say that their purpose was to insure continued control of the company by the organizers, and to permit a comparativelysmall portion of their stock to be resold at a figure which would constitute a partial compensation to them for their services in organizing the company and acting as its officers. Nothing could be more vague or disingenuous. Nothing appears to prevent them from selling all of their stock — they had bought it; it was theirs; there was no restriction in the sale to them, nor imposed upon them by themselves. At the price at which they were reselling it to the public, it meant $600,000 received for services entirely undefined. Their affidavits say that the salesmen were all instructed to disclose to purchasers all the facts about this forty thousand shares of stock; and that their counsel had advised them to *Page 224 
make such disclosure. The joint affidavit of the four principal salesmen is significant in its language. "We were instructed that purchasers * * * making inquiry were to be told that," c. "No sales were made except after all inquiries had been fully answered." (The italics are mine.)
The obvious way to inform purchasers would have been to set it forth in their circulars and on their subscription agreements. This they did not do — and it is inescapable that they were guilty of suppression and concealment of these material facts.
Their circulars also contained misleading statements, such as one to the effect that the company was "a nationally conducted system" — which was entirely untrue.
As a matter of fact only some $3,200 of the $4,000 was actually paid for the forty thousand shares. The defense affidavits contain another disingenuous statement, that the balance would long ago have been paid into the company, had it not been for the interim restraint in the order to show cause. That restraint in nowise prevented such payment.
It is concluded that the complainant is entitled to the injunction prayed for, and the appointment of a receiver.